UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

IN RE:                                          CASE NO.: 25-15015-LMI
                                                Chapter 11
Ocean Five Condominium Assn, Inc.               [Subchapter V]
        Debtor

                                    /

SMALL BUSINESS DEBTOR'S SUBCHAPTER V PLAN
*First Amended Plan*

This Plan of Reorganization("**Plan**") is presented to inform you of the proposed payment by Ocean Five Condominium Assn, Inc.("**Debtor**") which seeks your vote to accept the Plan.

You are encouraged to carefully review the Plan in its entirety, including any exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOUR OBJECTION MUST BE RECEIVED NO LATER THAN October 29, 2025 (the "**Objection Deadline**").

YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE MAILED TO THE FOLLOWING ADDRESS: 301 N Miami Ave # 150, Miami, FL 33128, SO AS TO BE RECEIVED NO LATER THAN October 29, 2025 (the "**Ballot Deadline**").

A HEARING (THE "CONFIRMATION HEARING") ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR  **November 13, 2025** IN COURTROOM No. 8 AT THE C. CLYDE ATKINS U.S. COURTHOUSE, 301 N MIAMI AVE, MIAMI, FL 33128 at **1:30 PM** or may be held by ZOOM on even date. ("**Confirmation Hearing**")

Your rights may be affected by this Plan. You should consider discussing this document with an attorney – Meyer & Nuñez, PA,  POB 470106, South Miami, FL 33243

Amended Plan
Dated: September 12, 2025
Page  1

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

This plan form is for a small business debtor under Subchapter V.  In that subchapter, Section 1190 requires that the plan include "(A) a brief history of the debtor's business operations; (B) a liquidation analysis; and (C) projections with respect to the debtor's ability to make payments under the proposed plan of reorganization."

## ARTICLE 1: HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

1.1.    Nature of the Debtor's  Business.
Debtor Ocean Five Condominium Assn, Inc. is a condominium association guided by the laws of the state of Florida to maintain and manage the structure located at 458 Ocean Dr, Miami Beach, FL 33139

1.2.    History of Business Operations of the Debtor:
Debtor is a nonprofit entity running the matters concerning a 16-unit condominium[1] located at 458 Ocean Dr, Miami Beach, FL 33139.

1.3    Filing of the Debtor's Chapter 11 Case.
On May 2, 2025, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the Bankruptcy Court for the Southern District of Florida.

1.4.    Legal Structure and Ownership.
The Debtor is a nonprofit entity guided by Florida statute. There are no owners, no stockholders, no members or other people or entities holding ownership of the Debtor.

1.5.    Debtor's Assets.
The Debtor owns no tangible assets of value. There are accrued receivables derived from the association's members' nonpayment. At the time of the petition this amounted to: $127,466.00. Of these assets, many are earmarked trust funds such as: (a) SIRS Reserve funds of $5,666.00; (b) Reserve Fund of $60,000.00; (c) and an operating account for daily expenditures or $24,000.00. Because the majority of these funds are held in trust – either by statute or condominium rule – the amount which could be touched (collected by) a judgment creditor is estimated to be approximately $40,000.00.[2]

---

[1]  Only 15 are paying monthly dues as explained further below.

[2]  A statement of liquidation analysis is attached as **Exhibit "B."**

1

Amended Plan
Dated: September 12, 2025
Page  2

The  $40,000.00 is mainly comprised of $37,000.00 of receivables, the majority of which are owed to the Debtor by the one creditor of this estate - The Birol Ozyesilpinar Living Trust Dated May 23, 2011 ("**the TRUST**") which has defaulted on its obligation to pay monthly association dues to the Debtor since July of 2024.

At the time of the filing and as of the time of this Plan, 15 of the 16 units were current with their monthly payments to the Debtor.  The TRUST's last payment was for $160.00 on July 20, 2024.  Since that July 2024 payment, at which time  a balance of $2,900.00 for dues remained owing, no payments have been made by the Trust to the Debtor.  Those nonpayments to the TRUST has increased the receivable  owed to the association for five months at $1,885.00 per month [the 2024 assessed amount]  for a balance of $12,325.00 at the end of 2024.  In 2025,  the TRUST did not pay the presently assessed $2,134.00 monthly dues owed to the Debtor in 2025. Prepetition, that unpaid debt was no less than $8,536.00.  Postpetition, through November of 2025, the amount will increase by another seven months or no less than $14,938.00 additional debt.  The minimum owed, as the amounts shown below are exclusive of costs, fees or interest are shown in the  box below.

| Dates | Amount | Description |
|-------|--------|-------------|
| July 2024<br>August 2024 to December 2024<br>January 2025 to April  2025 | $2,900.00<br>+$9,425.00<br>+$8,536.00<br>TOTAL:$20,861.00 | Prepetition debt owed by the TRUST to the Debtor |
| May 2025 through November 2025 | $14,938.00 | Pre-Confirmation Debt (estimated if payments for dues continue not being paid by the TRUST) |

The postpetition nonpayments by the TRUST have  affected the ability to pay creditors.  Debtor asserts that all postpetition debt derived from the TRUST be setoff off against the Plan's proposed payments to – not the claim of – the TRUST. That sum ("**Pre-Confirmation Setoff Amount**"), which continues to increase, is tremendously detrimental to an estate of 16 units and represents approximately 6% of the Debtor's monthly gross revenue.  If the TRUST's nonpayments continue through Confirmation, the Setoff Amount would be no less than $14,938.00 at the time of Confirmation.

Amended Plan
Dated: September 12, 2025
Page  3

1.6.    Debtor's Liabilities.

The debts of DEBTOR are estimated as follows:

| Class/ Creditor | Name | Estimated Amount |
|---|---|---|
| 1 Administrative Claims | Carol Lynn Fox, Trustee Meyer & Nunez, PA Alvin Hagerich CPA | $6,000.00 $10,000.00 in addition to retainer $7,500.00 |
| TOTAL Secured | | $0.00 |
| 2 Unsecured Priority | | $23,500.00 plus retainer estimated |
| TOTAL Priority | | |
| 3 Unsecured General | The Birol Ozyesilpinar Living Trust Dated May 23, 2011 | $583,000.00[3] |
| TOTAL Undisputed General Unsecured | | $583,000.00 |

1.7.    Current and Historical Financial Conditions.

With the exception of the TRUST, Debtor has maintained a business without any aging liabilities. The monthly recurring debt associated with the management of the association was always timely paid.

1.8.    Events Leading to the Filing of the Bankruptcy Case.

Prior to the filing of this bankruptcy, a lawsuit was filed in the Miami-Dade County Circuit Court ("**State Court**").  Debtor filed suit against the Birol Ozyesilpinar Living Trust Dated May 23, 2011, et al on June 27, 2019. ("**Civil Lawsuit**") The Civil Lawsuit included Declaratory Relief and Injunctive Relief by the Debtor against the TRUST regarding violations of the By-Laws of Ocean Five Condominium. The Civil Lawsuit was assigned the case number 2019-19470-CA-01.

On October 29, 2019, The TRUST filed an Amended Answer and Affirmative Defenses. No counterclaim was filed. The eight affirmative defenses were stricken by order of the State Court on

---

[3] The TRUST  has chosen to file three claims for items which may relate to the litigation which ended with a judgment of $583,000.00. There is a reservation for fees included in the judgment, but the TRUST has not filed any papers to have the same quantified by the one court holding jurisdiction over such matter.  Objections to the claims have been filed.

3

February 6, 2020, which gave leave for The TRUST to amend the same within 20 days.

On February 10, 2020, The TRUST filed a counterclaim. The counterclaim included the following requests: (1) an injunction against Debtor; (2) Breach of Condominium Declaration; (3) Intentional Infliction of Emotional Distress; and (4) Selective Enforcement. On that same day, Debtor moved for a temporary injunction against Trust.

The matter appeared ready for trial in 2020. Exhibits were downloaded on October 15, 2020. Nothing ensued for nearly one year. On October 8, 2021, a Case Management Report was filed. Thereafter, the case was predominantly inactive and The TRUST's attorney was allowed to withdraw on May 3, 2022. New counsel filed an Amended Counterclaim on May 20, 2022 which requested: (1) Breach of Condominium Declaration; (2) Tortuous Interference with Business Relationship; (3) Intentional Infliction of Emotional Distress; and (4) Fraudulent Misrepresentation. Ultimately, trial was held, and a jury delivered a verdict in favor of the TRUST for $1,600,000.00 plus fees which was recorded in the Miami-Dade County records O.R. Book 34657, Page 2142.("**Judgment** 1") Various motions were filed by the Debtor to remove or adjust Judgment 1. On March 5, 2025, Judgment 1 was reduced to $583,000.00 which was recorded in the Miami-Dade County O.R. Book 34654, Page 2247. ("**Judgment 2**")

Judgment 2 was then appealed by Debtor, and a cross appeal was filed by the TRUST – appearing not to be a filing by an attorney.  Those appeals were assigned case number 3D25-0603 in Florida's Third District Court of Appeal. ("**Appeals**")

The Appeals have been stayed – by order of the appellate court –  pending resolution of this bankruptcy case.

The TRUST has  filed three claims for items which may related to the litigation which ended with a judgment of $583,000.00. There is a reservation for fees included in the judgment, but creditor has not filed any papers to have the same quantified by the one court holding jurisdiction over such matter.

1.9.    Significant Events During the Bankruptcy Case.

No party had commenced any discovery during the first 70 days of the bankruptcy. In July, the TRUST made a request for documents. Trust, the one creditor, also filed some claims in this bankruptcy. The claims which have been filed are outlined as follows:

| Claim # | Claimant | Amount | Description of the Claim |
|---|---|---|---|
| 1 | FP&L | $0.00 | Just recognizes an account. No amount claimed. |
| 2 | the TRUST | $764,860.23 | Final Judgment plus prejudgment interest plus postjudgment interest plus prepetition attorneys' fees plus prepetition costs |

Amended Plan
Dated: September 12, 2025
Page 5

| 3 | the TRUST | $1,017,000.00 | Attached appeal documents, Amended Counterclaim documents, Judgment 2, Declaration of Condominium. No quantification exists in the claim to describe the claim's calculation. |
| 4 | the TRUST | $139,701.27 | As stated by claimant, "$11,000.00/month ($366.67 per diem) in lost net profits/income attendant to Debtor's continued, post-trial breach of the Condominium Declaration and Tortuous interference with Claimant's business relationships, for the 381 day period between April 16, 2025 and the Petition Date." |

Outside of bankruptcy, the TRUST has affected the Debtor's in two manners: (1) not paying the mortgage on her property; and (2) not paying her monthly dues to the Debtor. As described in ¶1.5 above, the nonpayment to the Debtor has created a debt exceeding $27,0000.00 and could more likely exceed $30,000.00 with interest and fees included in calculating the debt.[4]

**The Foreclosure on the TRUST's Property**

On July 16, 2024, a foreclosure was filed by U.S. Bank National Association against the TRUST regarding the property in the Debtor's association - Case 2024-013191in the Miami-Dade Circuit Court. ("**Foreclosure**") The Foreclosure claims the debt owed by the TRUST, at the time of the Foreclosure's filing, was $851,455.91, exclusive of fees and costs and accrued interest. The original note was for $794,000.00. An answer was not filed until May 19, 2023 which was filed by Birol Giulia Ozyesilpinar for what appears to be on her behalf alone. The Foreclosure remains pending. On May 19, 2025, the TRUST – through its trustee and not through an attorney – filed a response together with a counterclaim which included the following counts: (1) Breach of Good Faith and Fair Dealing; (2) Fraud and Misrepresentation; (3) Wrongful Foreclosure; (4) RESPA Violations; and (5) Promissory Estoppel. The counterclaim seeks the following remedies: (1) Dismissal of Foreclosure: An order dismissing or enjoining the foreclosure action, preventing any further foreclosure activities on the subject property pending a good-faith review and resolution of Defendant's repayment or modification options; (2) Damages: Compensatory damages for financial losses, emotional distress, attorney's fees, and other costs incurred because of Plaintiff's misconduct;

---

[4] The Debtor does not waive, and hereby expressly reserves, the right to file any avoidance actions, including without limitation, any actions under sections 547, 548, and 550 of the Bankruptcy Court. Debtor further does not waive the right to foreclose any owners for nonpayment of monthly dues.

and (3)Equitable Relief: Granting Defendant occupancy rights, removing any negative servicing or credit reports arising from Plaintiff's wrongful conduct, and instructing Plaintiff to proceed with a proper review of the loan modification or alternative repayment plans.    The Foreclosure has been stagnant since June of 2025.

Under Florida law, if title to the TRUST's condominium unit is purchased by the foreclosing entity at the Foreclosure's sale, significant losses may be realized by the Debtor. Under Florida law, if the Plaintiff purchases a property from its foreclosure, the liability of the purchaser is limited to the lesser of 12 months of unpaid fees or 1% of the original loan amount ($7,940.00).[5] If the TRUST's condominium unit is purchased by a third person, then the entire lien will continue to be an obligation of the purchaser. Regardless, the TRUST is liable to the Debtor for the above-described debts under Florida statute.

But, the burdens created by the collection process come with associated costs and fees which may not be collectible against the TRUST which appears to have one asset – the condominium unit. If the lender buys the property from sale associated with the Foreclosure, the limited payment of $7,940 by the lender - leaving a debt exceeding well over $25,000.00 by the TRUST – would appear to be uncollectible as the TRUST would then be without any known assets.

THIS PLAN AMENDS ALL PRIOR PLANS.

1.10.    Avoidable Transfers
The following have been identified as known preferential transfers: NONE.

## ARTICLE 2: THE PLAN

The Plan is payment to the creditors over time.

2.1.    Purpose of Claims
Creditors were noticed this Chapter 11 Case in order to afford them an opportunity to file a claim and receive a distribution in this Chapter 11 case. If a creditor did not file a claim, and they seek recourse against either a co-obligor or guarantor, they are informed that the failure to file a claim may give rise to legal defenses in favor of the co-obligor or guarantor.

2.2.    Unclassified Claims.
Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Claims are not classified. They are not considered impaired, and holders

---

[5]  The original note was for $794,000.00.

of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

A.    Administrative Debt

Administrative Debt incurred in the ordinary course of the Debtor's businesses shall be paid in accordance with terms between the holders of such debt and the Debtor, unless otherwise provided in the Plan.

Administrative Debt also includes any post-petition fees and expenses awarded to professionals, including the allowed Subchapter V Trustee fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 case. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment. They are displayed in 1.6 above.

These expenses are entitled to be paid at the time of Confirmation; provided, however, if the Debtor is unable to pay such allowed claims in full at Confirmation, the allowed amount of the claims will be paid as follows: (a) the Subchapter V trustee in full at Confirmation, then (b) the court-appointed accountant in full at Confirmation, then (c) an agreed percentage to counsel for the Debtor. If funds are insufficient to fully satisfy counsel for the Debtor, then counsel shall be paid monthly payments of $500.00 from the operations of the Debtor until fully paid.

The foregoing is without prejudice to the rights of the Debtor and other parties in interest to object to the allowance (and amount) of any Administrative Claim.

Subordination Requested

Because the TRUST is directly responsible for reducing assets in this estate by no less than $27,263.00 of unpaid dues, and $14,938.00 of that sum is for postpetition obligations, all payments to the TRUST should be subordinated to the administrative claims. The effect upon this estate by the TRUST's nonpayment of dues would be the key cause for any shortage of funds for these parties; and, by such fact subordination should be invoked.

2.3.    Estimated Number and Amount of Claims Objections.

Unless an order states otherwise, the Debtor shall have 60 days following the Confirmation Date to file any objections to Claims. If any objection is filed to a Claim, the Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan. Debtor intends to object to the claims prior to Confirmation.

2.4.    Treatment of Executory Contracts and Unexpired Leases.

The management contract with Blue Sky shall continue after confirmation and deemed assumed. No other executory contract is known to exist. Any utility or other commonly used contracts affiliated with condominium maintenance, if deemed executory, shall be assumed upon

7

confirmation.

2.5.    Means for Implementation of the Plan.

This Plan will pay from the disposable income (association dues collected) at the end of each period held for the creditors.

2.6.    Distributions. Payments will be paid quarterly in accordance with the payment schedule described in **Exhibit "A."**

Because the TRUST remains the only creditor and because the TRUST is not paying its association dues, Debtor has created a method to setoff the postpetition Pre-Confirmation debt and the post-Confirmation debt associated with the allowed claim of the TRUST.

**Setoff Amount –  Pre-Confirmation**

The unpaid dues by the TRUST creates an inequitable burden upon the remaining owners of the properties. For over one year, 94% of the dues have come from the owners other than the TRUST. Two methods are being incorporated to handle this inequity. The unpaid dues owed prior to the Petition Date will continue to be subjected to a lien. Debtor may seek to foreclose on the same, if so advised.  Dues owed from the Petition Date to Confirmation are identified as the Setoff Amount, which reduces payments to the TRUST by setting off payment not received from the TRUST between the Petition Date to the  Confirmation Date. Hence, any allowed claim of the TRUST will be reduced by the TRUST's unpaid postpetition dues (those which accrued from the Petition Date [May 2, 2024] to the  Confirmation Date).

**Setoff Amount - Post-Confirmation**

Dues owed after Confirmation are to be timely paid. If the TRUST does not timely pay dues post-Confirmation, the debt owed for the post-Confirmation dues will be setoff against the quarterly payment owed for that same period. The reduction in payment owed to the TRUST will be calculated with the new sum being divided by the remaining months of payments proposed to be paid to the TRUST. If that amount results in extinguishment of the debt, this Plan shall be deemed fully consummated.

FOR EXAMPLE. If the amount to be paid was $50,000.00 over 60 months or  $2,500.00 a quarter, the failure to pay the monthly dues, on the first payment's month, would reduce the quarterly payment by $6,042.00 [present monthly dues of $2,134.00 times 3]. ("**Post-Confirmation Setoff**") The payment amount then would be reduced by that amount – $6,042.00 which, in turn, would reduce the remaining 19 quarterly payments' total to $43,598.00.  Dividing that adjusted amount by the remaining quarters (19) would thereafter reduce the remaining quarterly payments to the TRUST to $2,294.63 [$43,598.00/19 = $2,294.63.]

Full payment to all creditors is estimated to be  $53,000.00.  That figure is derived from **EXHIBIT "A"** which shows approximately net cash of approximately  $875.00 each month which

would deliver the TRUST a quarterly payment of $2,625.00. ("**Trust Payment**") The TRUST Payment is then further reduced by the Pre-Confirmation  Setoff Amount – unpaid postpetition dues which are not paid by the TRUST from the Petition Date to the  Confirmation Date.  That amount may  be further reduced by the Post-Confirmation Setoff Amount – as described in above.

      2.7.    Means for Distribution. Payments will come from the monthly payments (dues) made by the condominium owners to the association.

      2.8.    Plan Described
    CONSENSUAL PLAN - If the Plan is confirmed under § 1191(a) of the Bankruptcy Code, the service of the trustee appointed under Subchapter V of Chapter 11 (the "Subchapter V Trustee" or "Trustee") in the case shall terminate when the Plan has been substantially consummated. As such, the Debtor shall make all distributions under the Plan, including any deposits required by the plan to be distributed upon Confirmation.

    NON-CONSENSUAL OR CRAMDOWN PLAN - If the Plan is confirmed under § 1191(b) of the Bankruptcy Code, except as otherwise provided in the Plan or in the Confirmation Order, the Subchapter V Trustee shall make distributions to creditors under the Plan. As such, the following provisions shall apply to all claims and distributions made by the Subchapter V Trustee under the Plan:

      a.    The Debtor shall file with the Court as a supplement to the Plan and provide notice to all creditors at or before Confirmation, a list of all the creditors who will be receiving distributions under the Plan, the total amount to be paid to each creditor under the Plan (inclusive of all allowed interest and fees) and the payment terms and

      b.    The Debtor shall timely pay to the Trustee all funds needed to make distributions to creditors under the Plan. If the Debtor fail to timely make any distributions to the Trustee, the Trustee may file and serve a notice of delinquency upon the Debtor and the Debtor's attorney. The Debtor shall have 45 days from the date of the notice of delinquency to make all distributions due under the Plan, including any distributions that become due within the 45-day period. If the Debtor seek to cure the delinquency in a modified Plan the Debtor must file a motion to modify the confirmed Plan within 45 days of the date of the notice of delinquency. If the Debtor is not current with Plan payments on the 45th day after the date of the notice of delinquency or has not filed a motion to modify The Plan within that time period, the Trustee will file and serve a report of non-compliance.

      c.    Within two (2) weeks of receiving the funds from the Debtor to make distributions under the Plan, the Trustee will disburse the amounts collected from the Debtor, to the holders of allowed claims pursuant to the treatment in their respective classes and as indicated below:

      I.    All distributions under the Plan will be made by the Trustee to the holder of each allowed claim at the address of such holder as listed on the Schedules and/or Proof of Claim, unless the Trustee has been notified in writing of a change of address.

      ii.    Any distribution required to be made under the Plan on a day other than a business

day shall be made on the next succeeding business day.

       iii.     Any distributions of cash or other property under the Plan that is unclaimed for a period of six (6) months after such distribution was made shall constitute unclaimed property and any entitlement of any holder of any claim to such distribution shall be extinguished, forever barred, and shall be returned to the Debtor.

       iv.     Claimants shall not be permitted to amend or otherwise modify any claim after the later of the claims bar date or the Confirmation Date without leave of the Bankruptcy Court. Any amendment to a claim filed after the later of the claims bar date or the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Trustee unless the claimholder has obtained prior Bankruptcy Court authorization for the filing of such amendment. The Trustee shall have no obligation to recognize any transfer of any claim after distributions have started.

       v.     Unless expressly provided in the Plan or the Confirmation Order, post- petition interest and fees shall not accrue on or after the Petition Date on account any claim.

       d.     During the pendency of this case, the Debtor shall provide copies of yearly income tax returns to the Trustee (but not file with the Court) no later than 30 days after the due date to the underlying taxing authority

       2.9     Plan Administrative Compensation

COMPENSATION - Under § 330 of the Bankruptcy Code, the case-by-case Subchapter V Trustee shall be compensated for services and reimbursed for expenses. However, the method of payment of the Subchapter V Trustee compensation depends on the provision under which the plan is confirmed:

       a.     The Subchapter V Trustee compensation is estimated to be $6,000.00 through confirmation. The Subchapter V Trustee will apply to the Court for an award of compensation through the application process that is used by professionals. The Subchapter V Trustee will file a final fee application for compensation to be heard with the other final fee applications in the case.

       b.     If the Plan is confirmed on a consensual basis under § 1191(a) of the Bankruptcy Code, then the Subchapter V Trustee's service ends with substantial consummation of the plan under§ 1183(c)(1), and the Subchapter V Trustee may collect approved compensation for all services. The Subchapter V Trustee's allowed compensation, as with any other administrative expenses, is payable on the effective date of the Plan, unless the Subchapter V Trustee agrees to a different treatment.

       c.     If the Plan is confirmed on a non-consensual basis under § 1191(b) of the Bankruptcy Code, then the Subchapter V Trustee will remain in place throughout the life of the Plan, and the Subchapter V Trustee may be entitled to additional compensation for services provided after confirmation. As such, the Subchapter V Trustee may file additional or supplemental fee applications throughout the life of the Plan. Upon approval of the Trustee's fee applications in a non-consensual case, as long as all professional administrative claims are similarly treated in the Plan, the debtor shall pay all fee amounts due to the Trustee on the effective date of the Plan, over the remaining life of the Plan, or forthwith.

2.10.    Post-Confirmation Management.

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be the same as prior to confirmation  – the board and Blue Sky as its managing company.

2.12.    Tax Consequences of the Plan.

CREDITORS AND EQUITY INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, OR ADVISORS.

2.13.    Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan See projections attached hereto as **Exhibit "A."**

## ARTICLE 3: FEASIBILITY OF PLAN

The Debtor believes that the Debtor will have enough cash on hand on the Effective Date of the Plan to pay Administrative Claims as provided in the Plan. The Plan is entirely funded by assets derived from condominium association payments. If there are insufficient funds, Debtor will make arrangements with Creditors to address the same.

## ARTICLE 4 : LIQUIDATION ANALYSIS.

A liquidation analysis is attached hereto as **Exhibit "B.**"

## ARTICLE 5: NO DISCHARGE OF DEBTOR

In accordance with § 1141(d)(3) of the Bankruptcy Code, the Debtor will not receive any discharge of debt in this bankruptcy case. The debts, when fully paid under the terms of this plan, shall be deemed fully satisfied. If fully paid, no alternative claims by any creditors can be made.

The contract created herein binds the TRUST and the Debtor to all matters concerning the Civil Lawsuit – 2019-19470-CA-01 and its associated Appeals. Full payment outlined in this plan constitutes full satisfaction of any and all claims relating to prepetition  debt allegedly owed by Debtor to the TRUST or any matters in the claims filed by the Trust in this bankruptcy matter.

## ARTICLE 6: GENERAL PROVISIONS.

6.1.    Title to Assets.

Under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is subject to all Secured Claims (if any) and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor; and, subject to the rights and claims as recited above so as to afford each creditor its respective rights to the proceeds from the Closing.

6.2.    Guarantor or Co-obligor

Amended Plan
Dated: September 12, 2025
Page  12

Upon confirmation, and no default in the confirmed plan's payments, creditors shall not be permitted to pursue any claim against any co-obligor or guarantor. In the event that the proceeds from the Closing are insufficient to cover the debt owed by the Debtor, and after receipt of the "less-than-full" payment from the Debtor, a Creditor may only then seek recourse against a guarantor or co-obligor.

6.3.    Binding Effect.

When the Plan is confirmed, the provisions of the Plan shall bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

6.4.    Severability.

If any provision in this Plan is determined to be unenforceable, the determination will not limit or affect the enforcement or operative effect of any other provision of this Plan.

6.5.    Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (a) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (b) to rule on any modification of the Plan proposed under § 1193; (c) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (d) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, (e) to determine any issues regarding payment or rights of parties to the Closing's proceeds, (f) to determine any of the Reserved Rights under the Settlement,- and (g) to adjudicate any cause of action which may exist in favor of the Debtor, including preference or fraudulent transfer causes of action.

6.6.    Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

6.7.    Substantial Consummation

The Plan shall be deemed to be substantially consummated under sections 1101 and 1193 of the Code upon commencement of distributions under the Plan.

6.8.    Inconsistency

In the event of any inconsistency between the Plan and any Exhibit to the Plan or any other instrument of document created or executed pursuant to the Plan , the text of the Plan shall govern. In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation

Order shall govern.

6.9.    Modification of Plan.

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including a demand that creditors vote again on the Plan. Under § 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

6.10.    Final Decree.

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

**ARTICLE 7: ATTACHMENTS**
- Ex A: Projected Income
- Ex B: Liquidation Analysis

**ARTICLE 8: FREQUENTLY ASKED QUESTIONS**

What are the Debtor attempting to do in Chapter 11? Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a Debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a Debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a Debtor will be treated.

Why Am I Receiving This Plan? In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that Debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

How Do I Determine Which Class I Am In? To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan

Amended Plan
Dated: September 12, 2025
Page 14

is confirmed. Section 1.6 lists all classes of claimants and their types of claims.

### ARTICLE 9: DEFINITIONS

9.1.    The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan. The definitions that follow that are found in the Code are for convenience of reference only, and are superseded by the definitions found in the Code.

9.2.    ADMINISTRATIVE CLAIM: Any cost or expense of administration of the Chapter 11 case entitled to priority under § 507(a)(2) of the Code and allowed under § 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estate under Chapter 123, Title 28, United States Code.

9.3.    ADMINISTRATIVE CLAIMANT: Any person entitled to payment of an Administration Expense.

9.4.    ADMINISTRATIVE CONVENIENCE CLASS: A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

9.5.    ADMINISTRATIVE TAX CLAIM: Any tax incurred pursuant to § 503(b)(1)(B) of the Code.

9.6.    ALLOWED CLAIM: Any claim against the Debtor pursuant to § 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (I) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

9.7.    ALLOWED PRIORITY TAX CLAIM: A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

9.8.    ALLOWED SECURED CLAIM: Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

9.9.    ALLOWED UNSECURED CLAIM: An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

9.10.    DEBTOR: Debtor known as Ocean Five Condominium Association, Inc .

9.11.    DEBTOR PETITION DATE shall mean May 2, 2025.

14

Amended Plan
Dated: September 12, 2025
Page 15

9.12.    BANKRUPTCY CODE OR CODE: The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

9.13.    BANKRUPTCY COURT: The United States Bankruptcy Court for the Southern District of Florida.

9.14.    BANKRUPTCY RULES: The Federal Rules of Bankruptcy Procedure.

9.15.    CASH: Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

9.16.    CHAPTER 11 CASE: This case under chapter 11 of the Bankruptcy Code.

9.17.    CLAIM: Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

9.18.    CLASS: A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

9.19.    CONFIRMATION: The entry by the Bankruptcy Court of an order confirming this Plan.

9.20.    CONFIRMATION DATE: The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

9.21.    CONFIRMATION HEARING: The hearing to be held November 13, 2025 at 1:30 PM 8 at the C. CLYDE ATKINS U.S. COURTHOUSE, 301 N Miami Ave, Miami, FL 33128 to consider confirmation of the Plan.

9.22.    CONFIRMATION ORDER: An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

9.23.    CONTINGENT CLAIM: A claim based upon a debt that depends on an event that has not yet happened and may not necessarily happen.

9.24.    COURT: United States Bankruptcy Court for the Southern District of Florida.

9.25.    CREDITOR: Any person who has a Claim against the Debtor that arose on or before the Petition Date.

9.26.    DEBTOR AND DEBTOR-IN-POSSESSION: The Debtor Ocean Five Condominium Association, Inc.

9.27.    DISPUTED CLAIM: Any claim against the Debtor pursuant to § 502 of the Code that the Debtor or interested parties have in any way objected to, challenged or otherwise disputed.

9.28.    DISTRIBUTIONS: The property required by the Plan or other order of the Court to

15

Amended Plan
Dated: September 12, 2025
Page 16

be distributed to the holders of Allowed Claims.

9.29.    EFFECTIVE DATE: The effective date of a chapter 11 plan is 30 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

9.30.    EQUITY INTEREST: An ownership interest in the Debtor.

9.31.    EXECUTORY CONTRACTS: All unexpired leases and executory contracts as described in § 365 of the Bankruptcy Code.

9.32.    FINAL ORDER: An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

9.33.    PETITION DATE: May 2, 2025, the date of Debtor's chapter 11 petition.

9.34.    PLAN: This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

9.35.    PRIORITY TAX CLAIM: Any Claim entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.

9.36.    REORGANIZED DEBTOR: The Debtor after the Effective Date.

9.37.    SALE ORDER: Order determining the liens and interests as explained in Section 2.10.

9.38.    SCHEDULES: Schedules and Statement of Financial Affairs as filed by the Debtor with the Bankruptcy Court listing liabilities and assets, including amendments thereto.

9.39.    SECURED CREDITOR: Any creditor that holds a Claim that is secured by property of the Debtor.

9.40.    TRUSTEE: Carol Lynn Fox, the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. § 1183(b), the Plan, or the order confirming the Plan.

9.41.    UNLIQUIDATED CLAIM: A Claim on a debt which is unliquidated because the Creditor doesn't know how much the Debtor will eventually owe

9.42.    UNSECURED CREDITOR: Any Creditor that holds an Allowed Claim in the Chapter 11 case which is not a secured Claim.

**Respectfully submitted,**

By: *Robert C. Meyer*                    By: *Carlos Herrera*

_____                    _____
Counsel for Debtor                                    Debtor's Agent

16

**Ocean Five Condominium**
**Association, Inc.**

| Account | 2025 | Year 1 2026 | Year 2 2027 | Year 3 2028 | Year 4 2029 | Year 5 2030 |
|---|---|---|---|---|---|---|
| | Budget | | | | | |
| 4000 Assessments Income 15 units | 258,898.00 | 288,636.22 | 303,330.96 | 319,230.69 | 336,461.20 | 355,031.69 |
| 4005 Reserves | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 |
| 4006 Structural Integrity Reserve Study | 56,600.00 | 57,732.00 | 58,886.64 | 60,064.37 | 61,265.66 | 62,490.97 |
| 4010 Special Assessment  Income | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 4135 Late Fee Income | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 4175 Owner Miscellaneous Income | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| 4200 Interest Income | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total** | **319,498.00** | **350,368.22** | **366,217.60** | **383,295.06** | **401,726.86** | **421,522.66** |
| **Expense** | | | | | | |
| 5000 Management Fees | 15,840.00 | 16,473.60 | 17,132.54 | 17,817.85 | 18,530.56 | 19,271.78 |
| 5005 Accounting Fees | 1,245.00 | 1,269.90 | 1,295.30 | 1,321.20 | 1,347.63 | 1,374.58 |
| 5010 Legal Fees | 15,000.00 | 15,300.00 | 15,606.00 | 15,918.12 | 16,236.48 | 16,561.21 |
| 5015 Communication Expense | 500.00 | 510.00 | 520.20 | 530.60 | 541.22 | 552.04 |
| 5025 Computer & Storage Fee | 175.00 | 178.50 | 182.07 | 185.71 | 189.43 | 193.21 |
| 5026 Website/Owners Portal | 600.00 | 612.00 | 624.24 | 636.72 | 649.46 | 662.45 |
| 5050 Licenses, Fees & Permits | 881.00 | 898.62 | 916.59 | 934.92 | 953.62 | 972.70 |
| 5055 Fees to Division | 64.00 | 64.00 | 64.00 | 64.00 | 64.00 | 64.00 |
| 5105 Insurance - Windstorm | 37,192.00 | 41,655.04 | 46,653.64 | 52,252.08 | 58,522.33 | 65,545.01 |
| 5110 Insurance - Gen.Liab/Comm. Prop | 23,388.00 | 26,194.56 | 29,337.91 | 32,858.46 | 36,801.47 | 41,217.65 |
| 5115 Insurance - Crime/Fidelity Bond | 310.00 | 310.00 | 310.00 | 310.00 | 310.00 | 310.00 |
| 5120 Insurance - Glass | 4,417.00 | 4,593.68 | 4,777.43 | 4,968.52 | 5,167.27 | 5,373.96 |
| 5125 Insurance - Boiler & Machinery | 1,284.00 | 1,335.36 | 1,388.77 | 1,444.33 | 1,502.10 | 1,562.18 |
| 5130 Insurance - D&O | 1,398.00 | 7,257.60 | 7,620.48 | 8,001.50 | 8,401.58 | 8,821.66 |
| 5135 Insurance - Flood | 5,018.00 | 5,218.72 | 5,427.47 | 5,644.57 | 5,870.35 | 6,105.16 |
| 5195 Insurance Finance Charges | 1,000.00 | 1,020.00 | 1,040.40 | 1,061.21 | 1,082.43 | 1,104.08 |
| 5200 Electric | 25,946.00 | 26,983.84 | 28,063.19 | 29,185.72 | 30,353.15 | 31,567.28 |
| 5205 Water & Sewer | 28,865.00 | 29,442.30 | 30,031.15 | 30,631.77 | 31,244.40 | 31,869.29 |
| 5210 Trash Removal | 14,196.00 | 14,479.92 | 14,769.52 | 15,064.91 | 15,366.21 | 15,673.53 |
| 5215 Cable/Satellite | 8,389.00 | 8,556.78 | 8,727.92 | 8,902.47 | 9,080.52 | 9,262.13 |
| 5225 Telecommunications | 3,170.00 | 3,233.40 | 3,298.07 | 3,364.03 | 3,431.31 | 3,499.94 |
| 5300 Elevator Maintenance | 6,200.00 | 6,448.00 | 6,576.96 | 6,708.50 | 6,842.67 | 6,979.52 |
| 5305 Pool Maintenance & Repair | 7,320.00 | 7,466.40 | 7,615.73 | 7,768.04 | 7,923.40 | 8,081.87 |
| 5310 Air Conditioning | 2,500.00 | 2,600.00 | 2,704.00 | 2,812.16 | 2,924.65 | 3,041.63 |
| 5315 Landscaping | 1,800.00 | 1,818.00 | 1,836.18 | 1,854.54 | 1,873.09 | 1,891.82 |
| 5320 Life Safety | 3,000.00 | 3,060.00 | 3,121.20 | 3,183.62 | 3,247.30 | 3,312.24 |
| 5325 Pest Control | 2,800.00 | 2,912.00 | 3,028.48 | 3,149.62 | 3,275.60 | 3,275.60 |
| 5335 Janitorial | 35,000.00 | 36,400.00 | 37,856.00 | 39,370.24 | 40,945.05 | 42,582.85 |
| 5340 Electric Repairs | 800.00 | 832.00 | 865.28 | 899.89 | 935.89 | 973.32 |
| 5350 Repairs & Maintenance | 4,000.00 | 4,160.00 | 4,326.40 | 4,499.46 | 4,679.43 | 4,866.61 |
| 5355 Lock & Gate Repair | 1,000.00 | 1,040.00 | 1,081.60 | 1,124.86 | 1,169.86 | 1,216.65 |
| 5360 Plumbing Repairs/Irrigation | 5,000.00 | 5,200.00 | 5,408.00 | 5,624.32 | 5,849.29 | 6,083.26 |
| 5370 Security | 600.00 | 612.00 | 624.24 | 636.72 | 649.46 | 662.45 |
| 5700 Reserves Expenses | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 | 4,000.00 |
| 5701 SIRS Expenses | 56,600.00 | 57,732.00 | 58,886.64 | 60,064.37 | 61,265.66 | 62,490.97 |
| Creditor Payments | | 10,500.00 | 10,500.00 | 10,500.00 | 10,500.00 | 10,500.00 |
| **Total** | **319,498.00** | **350,368.22** | **366,217.60** | **383,295.06** | **401,726.86** | **421,522.66** |
| | | | | | | |
| **Net Income** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** |

1 of 1

# Exhibit "A"

# Debtor's Estimated Liquidation Value of Assets

| Assets (at date of petition) | |
|---|---:|
| First Citizens Bank Account (Reserve SIRS)<br>*TRUST earmarked for others* | $5,666.00 |
| First Citizens Bank Account | $24,000.00 |
| First Citizens Bank Account | $800.00 |
| First Citizens Bank Account (Reserve Fund)<br>*TRUST earmarked for others* | $60,000.00 |
| Accounts receivable | $37,000.00 |
| Total Assets INCLUDING Trust Funds<br>Less *TRUST earmarked funds*<br><br>Total Assets at Liquidation Value | $127,466.00<br>($65,666.00)<br><br>$61,800.00 |
| | |

| Less | |
|---|---:|
| Subchapter 11 Trustee Fees | $6,000.00 |
| Chapter 7 Accounting Fees | $7,500.00 |
| Chapter 11 Professional Fees | $10,000.00<br>Plus retainer |
| Total Administrative Expenses | $23,500.00 |
| **Funds Available to Allowed Unsecured Creditors** | $38,100.00 |

| Estimated Allowed Claims | $583,000.00 |
|---|---:|
| Estimated Distribution Percentage | 6.53% |

# Exhibit "B"

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

IN RE:                                                    CASE NO.: 25-15015-LMI
                                                          Chapter 11
Ocean Five Condominium Assn, Inc.                         [Subchapter V]
        Debtor
_____/

**BALLOT AND DEADLINE FOR FILING BALLOT ACCEPTING OR REJECTING PLAN**

*TO HAVE YOUR VOTE COUNT YOU MUST COMPLETE AND RETURN THIS BALLOT BY THE*
*DEADLINE INDICATED BELOW [AS SET BY COURT ORDER]*
*The plan filed by Ocean Five Condominium Assn, Inc on September 12, 2025 can be confirmed by the*
*court and thereby made binding on you if it is accepted by the holders of two-thirds in amount and more than*
*one-half in number of claims in each class and the holders of two-thirds in amount of equity security interests*
*in each class voting on the plan. In the event the requisite acceptances are not obtained, the court may*
*nevertheless confirm the plan if the court finds that the plan accords fair and equitable treatment to the class*
*rejecting it.*

*This ballot is for creditor (insert name)_____*
*for the following type of claim placed in the indicated class in the indicated amount:*

| TYPE OF CLAIM | CLASS IN PLAN | AMOUNT OF CLAIM |
|---|---|---|
| ☐ **General Secured** | | $_____ |
| ☐ **General Unsecured** | | $_____ |

**The undersigned [Check One Box]**    ☐ **Accepts**        ☐ **Rejects**

**the plan for reorganization of the above-named debtor.**

**Signed:**        _____

**Print Name:**    _____

**Address:**

                  _____

                  _____

**Phone:**        (    )   –

**Date:**         _____/_____/_____

★★★**FILE THIS BALLOT ON OR BEFORE OCTOBER 29, 2025** ★★★

**with:**    **Clerk of Bankruptcy Court**
            ☐ 301 N Miami Ave # 150, Miami, FL 33128  OR  E-FILE

            **If you have more than one type of claim against this debtor, separate ballots must be**
            **filed and you should receive a ballot for each type of claim eligible to vote.  Contact**
            **the plan proponent regarding incorrect or insufficient ballot(s).**